**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**LA TIDTUS JONES**                                                              **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 1:13cv511-KS-MTP**

**WILLIAM DARR & DANIEL E. LAWSON**                        **DEFENDANTS**

### REPORT AND RECOMMENDATION

THIS MATTER came before the Court for an evidentiary hearing on March 17, 2015, pursuant to 28 U.S.C. § 636 (b)(1)(B) and Federal Rule of Civil Procedure 72(b).[1] The Plaintiff appeared *pro so*, and Tommy Goodwin appeared on behalf of the Defendants. The Court having heard the arguments of the parties and considered all the evidence, finds that the Plaintiff failed to prove by a preponderance of the evidence the claim asserted against the Defendants. Accordingly, the undersigned recommends that this matter be dismissed.

### FACTUAL BACKGROUND

Plaintiff La Tidtus Jones is currently incarcerated at East Mississippi Correctional Facility ("EMCF") after having been convicted of robbery in Washington County, Mississippi, and forgery in Tunica County, Mississippi. This lawsuit arises from events that allegedly occurred while the Plaintiff was incarcerated at South Mississippi Correctional Institution ("SMCI"). Plaintiff filed this civil rights action on or about February 6, 2013, pursuant to 42 U.S.C. § 1983. As set forth in his

---

[1]On July 1, 2013, United States District Judge Keith Starrett referred this matter to the undersigned United States Magistrate Judge for all further proceedings provided for by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, to include conducting hearings and submitting to the District Judge proposed findings of fact and recommendations for the disposition of this cause. *See* Order [21].

Complaint [1] and as amended at his *Spears*[2] hearing, Plaintiff asserts a claim against Defendants William Darr, a SMCI officer, and Daniel Lawson, a former SMCI officer, for excessive force in violation of the Eighth Amendment. Specifically, Plaintiff alleges that Darr and Lawson "jumped" him from behind without cause on or about October 9, 2011. Plaintiff alleges Darr and Lawson grabbed him by the neck, choked him, and then elbowed him and slammed him down on the floor. Plaintiff also alleges that the Defendants thereafter falsely accused Plaintiff of attempting to assault them.[3]

Plaintiff also asserted claims of excessive force, failure to protect, violations of privacy, confiscation of legal documents amounting to denial of access to the courts, confiscation and loss of other property, denial of administrative remedy procedure ("ARP") grievances, deliberate indifference to medical needs, lack of due process in disciplinary hearing, false rule violation reports ("RVRs"), and intimidating behavior against over a dozen different defendants.[4]  Plaintiff seeks $500,000 in damages.[5]

On April 30, 2014, Defendants filed their Motion for Summary Judgment [71] and Memorandum in Support [72], claiming that Plaintiff had failed to demonstrate any violation of his constitutional rights. On or about August 13, 2014, Plaintiff filed his Motion for Partial Summary Judgment [93], claiming he was entitled to judgment as a matter of law.

On September 23, 2014, the undersigned entered his Report and Recommendations,

---

[2]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing occurred on November 25, 2013.

[3]*See* Omnibus Order [46] at 2.

[4]*See generally* Omnibus Order [46].

[5]*See* Complaint [1] at 4.

recommending that Defendants' motion be granted in part and denied in part. The undersigned found that Plaintiff's excessive force claim against Defendants Darr and Lawson raised a genuine issue of material fact, and declined to recommend summary judgment as to that claim. However, the undersigned recommended summary judgment as to Plaintiff's remaining claims. The undersigned also recommended that Plaintiff's motion for summary judgment be denied.[6] On December 23, 2014, the Court entered an Order adopting the Report and Recommendations.[7]

Subsequently, the Court set this matter for an evidentiary hearing on March 17, 2015.[8] Plaintiff's evidence consisted of his own testimony, and the testimony of Inmate Daniel Hinton, Defendant Daniel Lawson, and Defendant William Darr. Additionally, Plaintiff submitted several documents as evidence.[9] The Defendants presented the testimony of MDOC employee Debra Platt and Wexford Health Services employee Dr. Charmaine McCleave,[10] in addition to documentary evidence.[11]

Plaintiff first called Daniel Hinton, an inmate at SMCI. Hinton testified that on October 9, 2011, he witnessed Defendant Lawson grab the Plaintiff and wrestle him to the floor. Hinton testified that he witnessed Defendant Darr arrive during this time and assist in wrestling Plaintiff to the floor. He testified that Plaintiff did not attempt to strike either officer and had his hands held out

---

[6]*See* Report and Recommendations [100].

[7]*See* Order [106].

[8]*See* Order Setting Pre-Trial Conference and Trial [107].

[9]*See* Plaintiff's Exhibit List [137].

[10]*See* List of Witnesses [136].

[11]*See* Defendants' Exhibit List [138].

at all times. He testified that Plaintiff did not resist Darr or Lawson.

On cross-examination, Hinton testified that Defendant Lawson struck Plaintiff in the back of the head or neck with a hand radio a single time before Defendant Darr came over and wrestled Plaintiff to the ground. Hinton testified that Defendant Darr never struck Plaintiff.

Next, Plaintiff called Defendant Lawson. He testified that on October 9, 2011, he was an SMCI correctional officer assigned to Units A1 and A2.[12] Lawson testified that he was ordered to frisk two inmates, including the Plaintiff, to search for cell phones. Lawson testified that he and Defendant Darr entered Unit A1 and ordered the inmates to return to their racks. He testified that he proceeded to frisk the Plaintiff, and that a cell phone subsequently fell from the Plaintiff's waistband. Lawson testified that Plaintiff then took at swing at him. He testified that he never struck the Plaintiff, and that Defendant Darr subdued the Plaintiff by grabbing him by the shoulders and pulling him to the ground. He testified that he used a radio to call for back up, but that he never hit the Plaintiff with the radio.

On cross-examination, Lawson testified that he was ordered by Brenda Sims, a superior officer at SMCI, to search the Plaintiff for a cell phone. Lawson reaffirmed that no one struck the Plaintiff during the incident. He testified that he assisted Darr in keeping the Plaintiff on the ground until reinforcements arrived. Lawson testified that he had never had any contact with the Plaintiff before that day.

On re-direct, Lawson clarified that Sims had given him a bed number, which was the bed number assigned to the Plaintiff, to search for a cell phone. Lawson was then asked to sketch the

---

[12]As stated above, Lawson no longer works at SMCI. He testified that he left SMCI for a better paying job.

4

dimensions of the unit where the incident took place, as well as where Plaintiff was standing when he was searched. Lawson made the sketch, with a dot indicating where the Plaintiff was located. The sketch was then offered into evidence as P-19.

Lawson was then presented with Defendants' Exhibits D2 and D3, which are the RVRs Plaintiff received for possessing a cell phone and assaulting an officer, respectively.[13] Lawson was also presented with Plaintiff's Exhibit 20, which was an additional RVR the Plaintiff received on October 9, 2011, for possessing a shank. Lawson read the RVRs aloud. Plaintiff's Exhibit 20 stated that a sharp instrument or shank was found in Plaintiff's bed upon a search conducted soon after the incident involving Defendants Darr and Lawson. Lawson noted that the RVR was written by Defendant Darr. Lawson testified that all three RVRs stated that the relevant incidents occurred at approximately 9:45 a.m.

On re-cross, Lawson testified that the timing of the discovery of the cell phone, assault, and discovery of the shank occurred in immediate succession around 9:45 a.m.

Next, Plaintiff called Defendant Darr. Darr testified that he is still employed at SMCI, although he is no longer a correctional officer. On October 9, 2011, Darr testified that he was assigned to be the yard officer of Plaintiff's unit. Darr testified that on that day, he received a call from Brenda Sims ordering him to frisk the Plaintiff due to a tip from the tower officer that Plaintiff had a cell phone. Darr testified that Defendant Lawson's search revealed a cell phone in Plaintiff's left waistband. Darr testified that upon its discovery, Plaintiff attempted to throw the cell phone.

On cross-examination, Darr testified that he took Plaintiff to the ground by grabbing the top of Plaintiff's shoulders and pulling him away from Defendant Lawson. Darr testified that once they

---

[13]*See* List of Defendants' Exhibits [138].

fell to the ground, Plaintiff repeatedly attempted to get to his feet despite Darr's orders that he stay on the ground. Darr testified that he did not strike Plaintiff or attempt to choke him, and that before that day, he had never had any interaction with Plaintiff. He testified that he did not see anyone else strike Plaintiff.

Darr testified that after reinforcements arrived and Plaintiff was taken away, he conducted a search of Plaintiff's bed. He testified that he uncovered a sharp, pointed object wrapped in a towel. He then prepared an RVR for Plaintiff for possession of a shank. Darr testified that he listed the time of discovery as approximately 9:45 a.m., but he could not pinpoint the time.

Finally, Plaintiff testified about his claims. He testified that on October 9, 2011, he was incarcerated at SMCI and housed in Unit A1, Bed 148. He testified that on that day, Defendant Lawson entered the yard and ordered the inmates to return to their racks. Plaintiff testified Lawson then ordered him to turn around, and at that time an object slid across the floor towards him. He testified that Defendant Darr put him in a choke hold for over a minute, while Defendant Lawson struck him repeatedly in the neck and head. He testified that SMCI officer Chiquita Brown arrived on the scene and ordered Darr and Lawson to cease their assault. He testified that the Defendants attacked him without cause, and that he did not resist their attempts to subdue him.

Plaintiff testified that as a result of the assault, he suffered injuries to his elbow, back, right shoulder and hand. Plaintiff testified that he was not taken to the medical unit until approximately 10 a.m. the next morning, October 10, 2011. He testified that he continued to complain about pain that resulted from the incident for a significant amount of time.

On cross-examination, Plaintiff testified that he was aware of several other civil rights actions, including one action involving an excessive force claim, he had filed that were dismissed

6

as frivolous. He reaffirmed that he was struck several times in the neck and head during the alleged incident, and that as a result his hands were bleeding, his knuckles were injured, he had a cut on his neck that was bleeding, he suffered bone spurs in his elbow, and that he aggravated a pre-existing injury in his back and shoulder.

Plaintiff was then presented with Defendants' Exhibit D4, which was the Administrative Remedy Procedure ("ARP") grievance Plaintiff filed regarding the alleged incident. Plaintiff testified that the ARP was devoid of any mention of being struck by the Defendants.

Plaintiff was next presented with Defendants' Exhibit D1, which is an SMCI medical record dated October 9, 2011, the day of the alleged incident. It is signed by SMCI Nurse Mittie Jordan. In the medical record, Nurse Jordan notes that Plaintiff had no open cuts or visible bruises. She noted that he had a small cut on his left index finger and that the skin on his back was red. Plaintiff testified that he believed the medical record to be false and that its original contents had been altered.

Finally, Plaintiff was presented with two documents admitted as Defendants's Exhibits D7 and D8. The first document is a medical record dated October 21, 2011, and signed by Dr. Woodland, a medical provider at SMCI. In the record, Dr. Woodland states that Plaintiff told her that the alleged incident of excessive force by the Defendants did not occur.[14] The second document is also a medical record, dated May 27, 2012, and signed by Dr. Charmaine McCleave, another medical provider at SMCI. In the record, Dr. McCleave states that the Plaintiff told her that he filed

---

[14]*See* Defendants' Exhibit D7.

the instant action in order to get some money.[15] Plaintiff testified that these medical records were also falsified and altered.

Debra Platt, an RVR hearing officer at SMCI, testified as the first witness for the defense. Platt testified that she was the hearing officer for the RVR that Plaintiff received for assaulting Defendant Lawson. She testified that he refused to sign the RVR, and thus he waived his rights at the hearing. Jones was not present at the RVR hearing, where he was found guilty.

The defense called Dr. Charmaine McCleave as their next witness. Dr. McCleave testified that she is an employee of Wexford Health Services, which is under contract with SMCI to provide medical care for the inmates. She was qualified as an expert in the field of general medicine. Dr. McCleave was presented with several of Plaintiff's medical records, including: (1) the record from the examination of the Plaintiff by Mittie Jordan that occurred on October 9, 2011;[16] (2) the record dated October 21, 2011, and signed by Dr. Woodland;[17] and (3) the record dated May 27, 2012, and signed by Mr. McCleave.[18] Dr. McCleave testified that the medical records at SMCI are kept electronically and cannot be altered after they are signed and entered.

Dr. McCleave reviewed Mittie Jordan's medical report and testified that the details Jordan noted in her report–the reddening of the upper back, no bruising, and no cuts–were consistent with the Plaintiff being wrestled to the floor, and were inconsistent with the Plaintiff being punched or

---

[15]*See* Defendants' Exhibit D8. This document was not immediately admitted into evidence due to an authentication objection. It was later properly authenticated by Dr. Charmain McCleave and admitted into evidence.

[16]*See* Defendants' Exhibit D1.

[17]*See* Defendants' Exhibit D7.

[18]*See* Defendants' Exhibit D8.

struck repeatedly.

On cross-examination, Dr. McCleave testified that if a Wexford employee makes a mistake in entering a record, he or she must make an additional entry in order to correct the mistake, and that they cannot alter the original entry. She also testified that she believed she ordered an x-ray of Plaintiff's hand on May 27, 2012, and that the results were normal.

Plaintiff then called inmate Daniel Hinton as a rebuttal witness. Hinton testified that he had never received a x-ray for medical purposes at SMCI, that he had never met Dr. McCleave, and had never had any interaction with Defendant Darr.

The Court has thoroughly considered Plaintiff's allegations, and the testimony given by the Plaintiff and the other witnesses at the hearing. The Court has also reviewed the exhibits admitted at the hearing and the submissions of the parties. Based on the foregoing, the Court concludes that Plaintiff has failed to prove by a preponderance of the evidence that the Defendants violated his constitutional rights by imposing excessive force.

## ANALYSIS

When prison officials are accused of using excessive force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Baldwin v. Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The Eighth Amendment's "prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *See Copeland v. Nunan*, No. 00-20063, 2001 WL 274738, at *2 (5th Cir. Feb. 21, 2001) (quoting *Hudson*, 503 U.S. at 1) (internal quotations and

citations omitted). Some of the relevant objective factors in the inquiry of the application of excessive force include: "1) the extent of the injury suffered; 2) the need for the application of force; 3) the relationship between the need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of the forceful response." *Baldwin*, 137 F.3d at 838-39.

Based on the testimony and the evidence submitted at the evidentiary hearing, the undersigned concludes that the alleged force, if any, by Defendants Lawson and Darr "was applied in a good faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Id.* at 838. The testimony of Defendants Lawson and Darr establishes that Darr stopped Plaintiff to conduct a pat down search. The search was ordered by a superior officer at SMCI based on a tip that Plaintiff possessed a cell phone. Based on this information, Defendants reasonably believed that Plaintiff had contraband on his person. Testimony also revealed that the Plaintiff attempted to strike Defendant Lawson after a cell phone was discovered in his waistband. The undersigned finds that the Defendants' subsequent efforts to subdue the Plaintiff by grabbing him and pulling him to the ground were reasonable in light of Plaintiff's attempt to assault Defendant Lawson. Plaintiff's version of events–that he was attacked without cause and brutally beaten–is not supported by the evidence.

The undersigned also takes note of the impeachment evidence offered at the hearing against the Plaintiff. As outlined above, Defendants offered documentary evidence indicating that Plaintiff made similar statements to two medical employees at SMCI–Dr. Woodland and Dr. VanCleave– that the instant action was without basis, and that he fabricated the claim in order to obtain a judgment

granting a monetary award.[19]

Moreover, Plaintiff has failed to offer any medical records or corroborating evidence to establish that his injury, if any, caused by the alleged assault on October 9, 2011, was anything more than a *de minimis* injury. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation. *Hudson*, 503 U.S. at 7; *see also Lee v. Wilson*, 237 Fed. App'x 964, 2007 WL 2141956 at *1 (5th Cir. 2007) (affirming dismissal of prisoner's excessive force claim because prisoner's busted lip was a *de minimis* injury). While Plaintiff claims that his right elbow, shoulder, hand and back were injured as a result of the alleged assault on October 9, 2011, there are no medical records that establish any such injury in connection to this incident. Plaintiff's medical records indicate that he was examined by SMCI nurse Mittie Jordan on the day of the incident. Jordan noted that Plaintiff had no visible bruises and no open cuts. She noted that Plaintiff had a small scratch on his left index finger and that his skin was red on his upper back. *See* Exhibit D-1. The undersigned finds that Plaintiff's testimony that someone tampered with his medical records and removed relevant information is not credible.

Based on the foregoing, the undersigned concludes that Plaintiff has failed to establish by a preponderance of the evidence that Defendant violated his constitutional rights by subjecting him to excessive force.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that this action be dismissed with prejudice.

---

[19]*See* Defendants' Exhibits D7 & D8.

## <u>NOTICE OF RIGHT TO OBJECT</u>

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 26th day of March, 2015.

s/ Michael T. Parker
United States Magistrate Judge

12